Jones, Chief Judge,
delivered the opinion of the court':
The single issue in this case is the value of a vessel owned by plaintiff and which was requisitioned by the War Shipping Administration on November 16, 1942.
At the time of the requisition the vessel had not been registered or licensed. It had not been used and it had not been named.
The vessel was designed and built as a pleasure craft of the cruising houseboat type. Its length was 70 feet, its beam 15 feet, and its draft approximately 4 feet. The hull was made of wood. There was a raised deck forward, a sunken deckhouse amidship, and a trunk cabin aft. A more detailed description is set out in finding 2.
Construction of the vessel was begun in 1929 at the shipyard of the Humphreys Shipbuilding Corporation in Key-port, New Jersey.
Plaintiff purchased the unfinished vessel or hull in September 1931. In October 1933 the hull of the vessel was painted, the decks were covered with tarred roofing paper, and the vessel was launched and towed to Solomons, Maryland, to remain there in brackish water from October 1933 to November 1936. It was drydocked and painted twice during this period.
On November 26, 1936, the vessel was tied up at a fresh water dock in Washington, D. C. It remained there until the time of its requisition. During that period it was again twice hauled and the hull painted.
During the period of its stay in Washington the plaintiff employed workmen to complete the construction. Most of the work was done by two men, one being a carpenter, cabinetmaker and shipwright, and the other a mechanic, plumber and electrician. The mechanic was engaged in the work *663 from May 1938 to May 1941. He installed the engine in 1939. The carpenter worked until July 1942. Other workmen did some of the rough work and painting and served as helpers. When the vessel was requisitioned in November 1942 it was complete with some small exceptions.
After acquiring the vessel the plaintiff spent approximately $36,000 for labor, materials, storage and insurance.
The vessel had never been used at the time of its requisition. In fact, the construction work had covered a considerable period and was completed only a short time before the date of requisition.
At the trial five more or less expert witnesses expressed opinion as to the value of the vessel at the time of requisition, as follows:
Witness No. 1, called by plaintiff, $12,000. This witness based his opinion on his knowledge of sales in the months and years immediately preceding the date of requisition.
Witness No. 2, called by plaintiff, $30,000 to $35,000. This witness was an appraiser. He based his opinion on his estimate of cost, with little or no allowance for depreciation.
Witness No. 3, called by plaintiff, $23,000. This witness was a shipbuilder. He based his estimate on 1929 cost, depreciated.
Witness No. 4, called by defendant, $15,650. This witness believed that the vessel had a market value, in 1945 (when he first saw it), of $6,500; that it would have cost, in 1945, $13,725 to restore the vessel to 1942 condition, and that two-thirds of the restoration cost should be allowed as new-for-old. He therefore added $9,150 to $6,500, and stated the sum $15,650, as his opinion of the value of the vessel in 1942.
Witness No. 5, called by defendant, $16,200; $12,200; and $15,000. The first figure was based on cost depreciated by the Kigg Scale. The second figure was based on his own comparison of the vessel and the Chelabark (requisition price). The third figure represented the average of prices accepted by owners whose yachts (considered comparable by the witness) had been requisitioned.
Thus there is a wide variance in the value of the vessel as viewed through the lenses of these several witnesses. It has always seemed strange that men who qualify as experts on *664 the basis of their experience and background can look at the same vessel and have such widely divergent ideas as to its value. They look at the same wood, steel, and other materials. We call them experts. They qualify as such. It is in their line of business and they should know. Their method of arriving at value has always been a mystery to the layman.
There was no well-established general market for vessels of this type at that time. We must therefore find the fair and reasonable value of the vessel at the time of the taking.
Viewing the record as a whole and considering the testimony of the experts, the condition of the vessel, the fact that it had never been used, the amount that had been spent on it, we. find that the fair and reasonable value of the vessel at the time of the requisition was $20,000.
The plaintiff has been paid the sum of $5,250, representing 75 percent of $7,000, the amount administratively awarded as just compensation. Plaintiff was tendered payment on August 10, 1945, but did not at first accept, and only agreed to accept partial payment on September 24, 1948. He is therefore not entitled to interest on three-fourths of the amount that was tendered him for the period August 10,1945, to September 24,1948.
Plaintiff is entitled to recover the sum of $14,750, plus interest on $20,000 from the date of requisition, November 16,1942, to August 10,1945, together with interest on $14,750 from August 10, 1945, to date of payment at the rate of 4 percent per annum, all interest being allowed not as interest, but as a part of just compensation.
Howell, Judge; Madden, Judge; Whitaker, Judge; and LittletoN, Judge, concur.